IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

MICHAEL J. MCCURDY, et al.,

    Plaintiffs,

    v.

JOHN CRANE-HOUDAILLE, INC.,
et al.,

    Defendants.

CIVIL NO.: WDQ-07-2681

MEMORANDUM OPINION

Michael J. ("Mr. McCurdy") and Anna McCurdy (collectively, the "plaintiffs") sued Burnham, LLC ("Burnham") and numerous other defendants in this asbestos case. Burnham is the only remaining direct defendant. Pending is the plaintiffs' motion to remand. For the following reasons the motion will be granted.

I. Background[1]

In 1967, Mr. McCurdy joined the Naval Reserves; in 1969 he reported for active duty Navy service in Philadelphia where he was assigned to the USS *Intrepid*, which was in dry dock. ECF Nos. 248-1 at 7, Tr. 21:2-8, 22:5-9; 248-5 at 10, Tr. 123:1-7. On the *Intrepid*, Mr. McCurdy worked as a machinist mate in the engine room; among his duties was replacing gaskets. ECF No.

---

[1] The relevant facts are not in dispute.

248-1 at 7-8, Tr. 22:19-21, 25:15-17. The gaskets and packing were made by defendants Garlock Sealing Technologies, LLC ("Garlock") and Greene Tweed & Co. ("Greene Tweed") or their predecessors. ECF No. 212-9. McCurdy believed that the *Intrepid*'s turbines were manufactured by defendants General Electric or Westinghouse. ECF No. 248-5 at 11, Tr. 125:7-12.

In 1970, the *Intrepid* ran aground and was placed in dry dock in Boston. *Id.* at Tr. 128:15-17. During servicing, the turbines were opened. *Id.* at Tr. 128:20-129:6. After Mr. McCurdy was honorably discharged from the Navy in 1971, he worked as a boiler technician at various companies until 1989. *See* ECF Nos. 248-1 at 7; 248-5 at 5-8.

In April and May 2007, Mr. McCurdy was treated for breathing difficulties and was diagnosed with mesothelioma. ECF No. 212-5. On May 11, 2007, the plaintiffs filed suit against numerous asbestos manufacturers in the Circuit Court for Baltimore City, Maryland for negligence and related common law claims. ECF No. 3. On May 30, 2007, Greene Tweed answered, asserting that it was immune from liability because it designed and manufactured its products under specifications from the U.S. government, and the government knew more of the health hazards of its products than it did. ECF No. 4 ¶ 17. On June 15, 2007, Garlock answered, but did not assert a federal contractor

defense. ECF No. 20. Burnham and many of the other defendants filed crossclaims against each other. *E.g.*, ECF No. 69.

On October 2, 2007, Garlock and Greene Tweed removed to this Court based on federal enclave and federal officer jurisdiction. ECF No. 1. On October 25, 2007, the plaintiffs moved to remand. On November 10, 2007, Mr. McCurdy died. *See* ECF No. 247-1. On November 13, 2007, Garlock and Greene Tweed opposed the motion to remand. ECF No. 212. Among the attachments to the motion were schedules of products with approved specifications for the armed forces. ECF No. 212-9.

On November 19, 2007, then-District Judge Andre M. Davis administratively closed this case after a conditional transfer order was issued by the Judicial Panel on Multidistict Litigation. ECF No. 213. On April 8, 2008, the Panel ordered the transfer of the case to MDL No. 875 in the U.S. District Court for the Eastern District of Pennsylvania. ECF No. 220; *see also* ECF No. 221 (transfer order from Eastern District of Pennsylvania). Pursuant to MDL No. 875 Administrative Order 11, the pending motion to remand was deemed denied without prejudice.

While the case was in the Eastern District of Pennsylvania, the vast majority of the defendants were either dismissed or granted summary judgment. *See* ECF No. 228-1 (docket). On June

5, 2010, Garlock filed for bankruptcy.[2] On May 21, 2012, Greene Tweed settled, and on July 12, 2012, it was dismissed with prejudice. ECF No. 228-1 at 65.

On October 31, 2012, this case was remanded to this Court with Burnham as the sole remaining non-bankrupt direct defendant. ECF No. 228; see ECF No. 239. On February 28, 2013, the plaintiffs again moved to remand. ECF No. 247. On March 18, 2013, Burnham opposed, ECF No. 248, and on April 4, 2013, the plaintiffs replied, ECF No. 250.

II. Analysis

In the notice of removal, Garlock and Greene Tweed asserted (1) federal enclave and (2) federal officer jurisdiction. See ECF No. 1. Burnham asserts that jurisdiction is proper on both bases. See ECF No. 248.

A. Enclave Jurisdiction

Garlock and Greene Tweed removed to this Court under 28 U.S.C. § 1441(a)(1) asserting federal enclave jurisdiction. The parties agree that--generally--a ship is not federal land for purposes of federal enclave jurisdiction. ECF Nos. 247-1 at 11-13, 248 at 10; see Anderson v. Crown Cork & Seal, 93 F. Supp. 2d

---

[2] The parties agree that Garlock is in bankruptcy, but there is no suggestion of bankruptcy or other evidence in the record to reflect this. See ECF Nos. 247-1 at 1, 248 at 3. The Court believes it has located Garlock's bankruptcy case in the Western District of North Carolina. No. 11-31607 (Bankr. W.D.N.C.) (filed June 5, 2010).

697 (E.D. Va. 2000) (noting that ships are not lands for purposes of enclave jurisdiction). Burnham asserts that the *Intrepid*'s dry dock status conferred enclave jurisdiction and that removal was therefore proper. ECF No. 248 at 10-12.

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing where such action is pending." The removing party has the burden of proving subject matter jurisdiction. *Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005). Because removal raises "significant federalism concerns," removal under § 1441(a) must be strictly construed, and all doubts must be resolved in favor of remanding the case to state court. *Id.* (internal quotation marks omitted).

"Federal enclave jurisdiction is derived from Article I, Section 8, Clause 17 of the United States Constitution" under which Congress may "exercise like authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the erection of Forts, Magazines, Arsenals, dock-Yards and needful Buildings." *Anderson*, 93 F. Supp. 2d at 699; *see* U.S. Const. art. I, § 8, cl. 17; *see also* 16 U.S.C. § 457 (providing jurisdiction for personal injury

actions within federal enclaves). *Anderson*, following a prior Eastern District of Virginia case, reasoned that the enclave clause applied only to lands, not ships. *See Anderson*, 93 F. Supp. 2d at 700 (citing *McCormick v. C.E. Thurston & Sons, Inc.*, 977 F. Supp. 400, 402 (E.D. Va. 1997)). It followed this reasoning even though a portion of the asbestos exposure may have occurred in dry dock in a federal enclave. *See id.* at 699, 703.

Burnham has not cited any direct authority for the proposition that a dry docked ship receives the enclave status of where it is docked. The Court has located one case where a court found federal enclave jurisdiction for work performed on a dry docked ship, *Corley v. Long-Lewis, Inc.*, 688 F. Supp. 2d 1315, 1328 (N.D. Ala. 2010). *Corley* is not persuasive. First, the work in *Corley* required use of the naval base's facilities, of which there is no evidence in this case. *See id.* Second, *Corley* apparently disagreed with the holding in *Anderson*, a case from this circuit which the Court and apparently the parties find persuasive. *See* ECF Nos. 247-1 at 11-13, 248 at 10. Accordingly, this Court will not follow *Corley*.

Burnham relies on *De Cosme v. Sea Containers, Ltd.*, 600 F. Supp. 42 (D.P.R. 1984) for its position. In that case, three longshoremen were injured while unloading a vessel at Pier 15 in San Juan. *Id.* at 42. A dispute arose over the law to be

applied, and the court held that Puerto Rico law applied because the federal government had alienated Pier 15 to Puerto Rico. *Id.* at 35. From this, Burnham asserts that if the federal government had not alienated the property, Pier 15 and its dry dock would have been within enclave jurisdiction. ECF No. 248 at 12. However, the *De Cosme* court did not hold that the accident would have been in federal enclave absent the alienation. Instead, it expressly declined to resolve the parties' other arguments about jurisdiction. *See De Cosme*, 600 F. Supp. at 45. Accordingly, *De Cosme* is not persuasive.

The Court finds *Anderson* persuasive, not *Corley* and *De Cosme*, particularly in light of the presumption against removal jurisdiction. *See Md. Stadium Auth.*, 407 F.3d at 260. Accordingly, the *Intrepid*'s dry dock status did not confer federal enclave jurisdiction.

B.   Federal Officer Jurisdiction

Burnham also relies on Greene Tweed's assertion of federal officer removal jurisdiction. ECF No. 248 at 19. 28 U.S.C. § 1442(a)(1) permits the removal of a civil suit against federal officers and their agents "for or relating to any act under color of such office." "To qualify for removal, a defendant must show a colorable federal defense and establish that the alleged act took place under color of office. To satisfy the latter requirement, the officer must show a nexus, or a '"causal

connection" between the charged conduct and asserted official authority.'"[3] Because of Congress's policy of having a federal defense heard in federal Court, removal under § 1442(a)(1) is construed less strictly than removal under § 1441(a). *See Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 700, 777 (E.D. Pa. 2010) (*citing Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 129, 1262 (3d Cir. 1994)).

The federal contractor defense in a design defect case, requires showing that: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988). For failure to warn liability, the defendant must show, "(1) the government exercised its discretion and approved certain warnings for the products; (2) the warnings provided by the contractor conformed to the federal specifications; and (3) the contractor warned the government about dangers known to the contractor but not to the government." *Joyner v. A.C. & R. Insulation Co.*, CCB-12-2294, 2013 WL 877125 at *7 (D. Md. Mar. 7, 2013) (*citing Oliver v.*

---

[3] *Baxley v. Advance Auto Parts*, No. 3:10-cv-02985-JMC, 2011 WL 586072, at *2 (D.S.C. Feb. 9, 2011) (*quoting Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999)).

*Oshkosh Truck Corp.*, 96 F.3d 992, 1003 (7th Cir. 1996)). Courts have not required the warnings to the government when the agency knew more about the danger than the contractor. *See, e.g., Beaver Valley Power Co. v. Nat'l Eng'g & Contracting Co.*, 883 F.2d 1210, 1216 (3d Cir. 1989). Burnham asserts that Greene Tweed[4] met these requirements. ECF No. 248 at 20.

In its answer, Greene Tweed asserted that its asbestos-containing products were "designed and manufactured pursuant to and in accordance with specifications mandated by the United States government or its agencies" and agencies' knowledge of "any possible health hazards from use of such products was equal or superior to that of Greene Tweed." ECF No. 4 ¶ 17. With their opposition to the original motion to remand, Garlock and Greene Tweed submitted a schedule approving their asbestos materials. ECF No. 212-9. Neither submitted any affidavits about the defense.

In presenting its federal contractor defense, Greene Tweed relied only on conclusionary allegations that do not rise to a colorable claim. Even if the product schedule met the first two *Boyle* elements, Greene Tweed failed to meet the third.

---

[4] Although Garlock removed with Greene Tweed, it did not assert a federal defense in its answer; Burnham relies solely on Greene Tweed for the federal defense. *See* ECF Nos. 20, 248 at 19. Accordingly, the Court will analyze the federal defense only as to Greene Tweed.

9

In *Joyner v. A.C. & R. Insulation Co.*, Civil No. CCB-12-2294, 2013 WL 877125 (D. Md. Mar. 7, 2013), Judge Blake found the warning element was colorably raised when the removing defendant alleged that the Navy "possessed knowledge regarding the hazards of asbestos equal to or superior to its equipment suppliers," the defendant also submitted an affidavit that the Navy did not permit asbestos manufacturers to provide with their products or documentation warnings not approved by the Navy. *See id.* at *3, *9. Similarly, in *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770 (E.D. Pa. 2010) (Robreno, J.),[5] the Court relied on affidavits discussing the manufacturers and Navy's knowledge of the dangers of asbestos. *Id.* at 784.

In this case, Greene Tweed submitted no affidavits explaining the Navy's procedures about warnings or the extent of its own or the Navy's knowledge of the dangers of asbestos. Further, it is unlikely that any additional information will become part of the record: Garlock is bankrupt and the direct claims against Greene Tweed have been dismissed. *See* ECF No. 228-1 at 65.

None of Greene Tweed's filings or exhibits indicates that it gave any warnings or that the government knew more about the dangers than it did. Rather it asserts only a conclusionary

---

[5] Judge Robeno is currently presiding over the asbestos litigation in MDL 875.

statement of the defense. See ECF No. 4 ¶ 17. Accordingly, it has not made a colorable claim under the third *Boyle* factor; absent such a claim, this Court lacks jurisdiction. *See Boyle*, 487 U.S. at 512; *cf. Joyner*, 2013 WL 877125, at *9.[6] The motion to remand must be granted.

III. Conclusion

For the reasons stated above, the plaintiffs' motion to remand will be granted.

_6/18/13_
Date

_/s/ William D. Quarles, Jr._
William D. Quarles, Jr.
United States District Judge

---

[6] *See also Hagen*, 739 F. Supp. 2d at 782 (noting that although "the Court is not called upon at this preliminary stage to pierce the pleadings or dissect the facts stated" it must "require that the facts identified by the defendant support the federal defense."). Greene Tweed identified no such facts. *Cf.* ECF No. 212.